IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT ALIOTTA and STEVE VAZQUEZ, on behalf of themselves and others similarly situated, | CIVIL ACTION FILE NO. |
| Plaintiff, | |
| v. | **COMPLAINT – CLASS ACTION** |
| SURGEPAYS, INC. dba SURGE LOGICS | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiffs Robert Aliotta and Steve Vazquez (hereinafter referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans "outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers" *id.* § 2(6), and sought to strike a balance between "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms" *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id…*This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Plaintiffs bring this action to enforce the consumer-privacy provisions of the TCPA alleging that SurgePays, Inc. d/b/a Surge Logics ("SurgePays") made telemarketing calls to numbers on the National Do Not Call Registry, including their own.

4. The Plaintiffs also allege that SurgePays used automated systems to make telemarketing calls from Florida, and that by doing so, SurgePays has violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

5. Because telemarketing campaigns typically use technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

6. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and FTSA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

7. Plaintiff Robert Aliotta is an individual.

8. Plaintiff Steve Vazquez is an individual.

9. Defendant SurgePays, Inc. is a Nevada corporation with principal place of business in Schaumburg, IL. Defendant is registered to do business into this District and does business in this District through the services it provides.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. The Court has supplemental jurisdiction over the FTSA claim because it arises from the same calls as the TCPA claim.

11. This Court has general jurisdiction over SurgePays because it has its principal place of business in this District.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the telemarketing calls that are the subject of this lawsuit were sent and organized from this District and Defendant resides here.

## TCPA BACKGROUND

The National Do Not Call Registry

13. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding

3

concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The Florida Telephone Solicitations Act

17. The FTSA, Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

18. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party.". Fla. Stat. § 501.059(8)(a).

19. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining

4

information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

20. Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## FACTUAL ALLEGATIONS

21. SurgePays is a lead generation company.

22. It specializes in finding leads for law firms.

23. To generate these leads, SurgePays relies on telemarketing.

Calls to Plaintiffs

24. Plaintiff Aliotta's telephone number, 716-602-XXXX, is a residential telephone line.

25. It is not associated with a business and is used by Mr. Aliotta only.

26. The telephone number has been on the National Do Not Call Registry since July of 2009.

27. Despite this, Mr. Aliotta received at least twelve telemarketing calls from SurgePays, including on November 1 (three times), 2, 3 (three times), 5, 7 (twice), 8 and December 7, 2022.

28. The calls promoted Surge Logics's lead generation services.

29. During the answered calls, the Plaintiff received a scripted telemarketing pitch.

30. The pitch included an inquiry about any recent injuries that the Plaintiff had that might be a good match for an attorney to represent the call recipient.

31. These inquiries were made so that the Defendant could match the Plaintiff with a law firm and charge for the service of matching the individual with the law firm.

32. The Plaintiff was not interested and had no such injuries so he asked the Defendant to not call on November 3 and November 5, 2022.

33. Despite that, the Plaintiff received the subsequent calls.

34. When you recall the Caller ID numbers that contacted the Plaintiff,

35. The Plaintiff, through counsel, wrote to the Defendant inquiring as to the basis for the telemarketing calls.

36. The Defendant did not respond claiming that they had consent to call or did not make the call.

37. The Defendant has received complaints of other similar calling conduct.

38. Plaintiff Vazquez's telephone number, 407-595-XXXX, is a residential telephone line.

39. It is not associated with a business and is used by Mr. Vazquez only.

40. The telephone number has been on the National Do Not Call Registry since June of 2003.

41. Despite this, Mr. Vazquez received at least eight telemarketing calls from SurgePays, including on December 9, 10 (twice), 11, and 12 (four times), 2022.

42. The calls promoted Surge Logics's lead generation services.

43. During the answered calls, the Plaintiff received a scripted telemarketing pitch.

44. The pitch included an inquiry about any recent injuries that the Plaintiff had that might be a good match for an attorney to represent the call recipient.

45. These inquiries were made so that the Defendant could match the Plaintiff with a law firm and charge for the service of matching the individual with the law firm.

46. The Plaintiff was not interested and had no such injuries so he asked the Defendant to not call on December 11 and 12.

47. Despite that, the Plaintiff received the subsequent calls.

48. The Caller ID for the calls identified LogicsIQ, which is a name that the Defendant uses in its marketing.

49. The Plaintiff, through counsel, wrote to the Defendant inquiring as to the basis for the telemarketing calls.

50. The Defendant did not respond claiming that they had consent to call or did not make the call.

51. The Defendant has received complaints of other similar calling conduct.

52. All of the calls answered by each Plaintiffs had a long delay after the Plaintiff answered.

53. Following the long delay, there was an audible click prior to the Plaintiffs speaking to a live person.

54. As such, all of the calls were sent by an automated call system, as evidenced by the fact that the Plaintiffs heard a distinct click and pause after picking up the phone and an elongated delay prior to hearing a response from the call recipient after he said "hello".

55. The calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as they seek to have him sign up for Defendant's lead generation services.

56. These calls qualified as telemarketing. 47 C.F.R. § 64.1200(f)(12).

57. Plaintiff and all members of the class defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were subjected to annoying

and harassing calls that constitute a nuisance. The calls also occupied Plaintiff's and class members' telephone lines from legitimate communication.

## CLASS ACTION ALLEGATIONS

58. Plaintiffs seek certification of the following Classes pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3):

> **Telephone Consumer Protection Act Do Not Call Registry Class:** All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendant (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

> **FTSA Autodial Class:** All persons, who, (1) received a telephonic sales call from Defendant, (2) made from or into Florida, (3) using the same equipment or type of equipment utilized to call Plaintiff (4) since July 1, 2021.

59. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Nichols anticipates the need to amend the Class definitions following appropriate discovery.

60. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

61. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA and FTSA; and

(b) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

62. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in class actions. The Plaintiffs have no interests antagonistic to those of the Classes, and Defendant have no defenses unique to the Plaintiffs. The Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither the Plaintiffs nor their counsel have any interest adverse to the Classes.

63. **Appropriateness**: This class action is also appropriate for certification because the Defendant have acted or refused to act on grounds generally applicable to the Classes and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiffs. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief

from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT I
### Violation of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059
**On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class**

64. Plaintiffs repeat and incorporate the allegations set forth in the prior paragraphs as if fully set forth herein.

65. Plaintiffs brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendant.

66. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

67. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

68. Defendant failed to secure prior express written consent from Plaintiffs and the Class Members.

69. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiffs and the Class members without Plaintiffs' and the Class members' prior express written consent.

70. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiffs and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

71. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiffs and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiffs and the Class members are also entitled to an injunction against future calls. *Id.*

## COUNT II
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the National Do Not Call Registry Class)

72. Plaintiffs repeat and incorporate the allegations set forth in the prior paragraphs as if fully set forth herein.

73. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

74. The Defendant's violations were negligent, willful, or knowing.

75. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

76. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, using an autodialer, including to numbers on the National Do Not Call Registry;

B. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation; and

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully submitted for Plaintiff,

Dated: January 4, 2023 By: */s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiff and the Proposed Class*